**Robert M. LEVINE, Plaintiff,**

v.

**Richard KLING, Defendant.**

No. 95 C 1998.

United States District Court,
N.D. Illinois,
Eastern Division.

April 23, 1996.

Robert M. Levine, Florence, Colorado, pro se.

Daniel J. Pope, Bell, Boyd & Lloyd, Chicago, Illinois, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Richard Kling's ("Kling") motion to dismiss plaintiff Robert M. Levine's ("Levine") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court grants Kling's motion to dismiss.

### I. BACKGROUND [1]

As the Seventh Circuit so aptly described the criminal case against Robert Levine:

Not too long after the Seventh Day, two brothers, Cain and Abel, were in a field. Cain attacked Abel—and killed him. Although life today is different than it was a generation removed from Eden, some things remain the same. In this case, Robert Levine hired an assassin to kill his brother, Donald Levine, and to kill Donald's family. The assassin killed Donald and his wife Marsha, and tried to kill Donald's son Mark. Robert Levine was convicted of one count of conspiring to use interstate commerce to effect murder for hire and of four counts of using interstate commerce to effect murder for hire. 18 U.S.C. §§ 371, 1958. Levine appeals his conviction and sentence.

*Levine,* 5 F.3d at 1102. The court of appeals then rejected Levine's arguments on appeal and affirmed his conviction and sentence. Now Levine, himself a law school graduate, is suing Kling, his appellate counsel, for legal malpractice. Levine's state law action is before this court on the basis of diversity of citizenship.[2]

Levine asks for at least $3,350,000 in damages because of Kling's allegedly negligent representation of Levine. Levine alleges that Kling failed to abide by Levine's decisions regarding his representation; failed to attend or was late for meetings with Levine; raised an ineffective assistance of counsel claim on appeal, despite Levine's concern about raising that issue; made errors during oral argument before the court of appeals; failed to file a motion for rehearing or rehearing *en banc* after the court of appeals issued its decision, and to notify Levine that Kling would not be filing such a motion; caused Levine to file his petition for writ of *certiorari pro se* by failing to notify Levine of his right to request review by the Supreme Court and to render any assistance to Levine; and terminated representation of Levine prior to completing his required duties and responsibilities.

Levine asks for compensatory damages of at least $2,350,000 for the following: $400,000 per year for loss of earnings, based on Levine's pre-imprisonment earnings; $250,000 for the fine imposed by the district court, plus $35,000 in interest and any additional interest that may accrue; $15,000 for the

---

1. The facts are taken from *United States v. Levine,* 5 F.3d 1100 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1224, 127 L.Ed.2d 569 (1994), and Levine's complaint.

2. *See* 28 U.S.C. § 1332. Before his imprisonment, Levine was an Arizona citizen and briefly resided in California while a fugitive; Levine now is incarcerated at the federal prison in Flor-

ence, Colorado. Kling is an Illinois citizen. Where the court's jurisdiction is based on diversity of citizenship, the resolution of substantive issues is controlled by the applicable state law. *LaSalle Nat'l Bank v. Service Merchandise Co.,* 827 F.2d 74, 78 (7th Cir.1987). The parties apparently agree that the applicable law in this case is that of Illinois.

restitution ordered by the district court, plus any interest that may accrue; and at least $750,000 for mental anguish and suffering caused by loss of reputation, loss of family ties, loss of consortium, and enhanced embarrassment suffered by Levine's family as a result of Kling's malpractice. Levine asks for punitive damages of $1,000,000.

Kling moves to dismiss Levine's complaint on the grounds that Levine's complaint is based on violations of the American Bar Association Model Rules of Professional Conduct, which cannot form the basis of an independent tort, and that Levine has failed to allege any facts showing that Kling's alleged malpractice caused the damages Levine now seeks to recover.

## II. DISCUSSION

### A. Standard for motion to dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport,* 699 F.Supp. 1283, 1285 (N.D.Ill. 1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* FED.R.CIV.P. 12(b)(6); *Gomez v. Illinois State Board of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Furthermore, the court liberally construes allegations in a *pro se* complaint, and applies less stringent standards than those applied to professionally drafted complaints. *Kincaid v. Vail,* 969 F.2d 594, 598 (7th Cir. 1992), *cert. denied, Sceifers v. Vail,* 506 U.S. 1062, 113 S.Ct. 1002, 122 L.Ed.2d 152 (1993).[3]

### B. Model Rules of Professional Conduct

Levine's complaint is framed in terms of violations of various rules of the American Bar Association's Model Rules of Professional Conduct. For example, Levine claims that Kling violated Rule 1.3, which states: "A lawyer shall act with reasonable diligence and promptness in representing a client." (Am.Complt. ¶ 3.3.0.) Levine then makes numerous allegations supporting why Kling violated that rule. (Am.Complt. ¶¶ 3.3.1—3.3.5.) Kling contends that these rules, even if violated, cannot form the basis of a tort action, and therefore that Levine's cause of action should be dismissed.

"[R]ules of legal ethics, while relevant to the standard of care in a legal malpractice suit, ... do not establish a separate duty or cause of action in tort." *Skorek v. Przybylo,* 256 Ill.App.3d 288, 291, 195 Ill.Dec. 274, 276, 628 N.E.2d 738, 740 (1st Dist.1993). Thus, Kling is correct that Levine cannot base his cause of action solely on violations of the ABA's Model Rules.

However, Levine also alleges that Kling engaged in "negligent and indifferent conduct in the representation of" Levine, and committed "general malpractice of the law in direct contravention of his oath of office before the Illinois Supreme Court." (Am. Complt. at 1.) Furthermore, Levine's complaint contains many factual allegations that arguably could support a malpractice action.

Thus, viewing Levine's complaint in the light most favorable to Levine, as the court is bound to do, the court finds that Levine's complaint is not based solely on violations of rules of ethics, and should not be dismissed on that ground.

### C. Legal malpractice

Kling contends that Levine has not sufficiently alleged, and cannot prove, that Kling's alleged negligence proximately caused the damages that Levine seeks to recover. Therefore, because Levine has not alleged and cannot allege a necessary element of legal malpractice, his case should be dismissed with prejudice. The court agrees.

---

3. The court notes that Levine earned a law degree as well as other advanced degrees, and that

his pleadings are not substantially inferior to professionally drafted pleadings.

To state a claim for legal malpractice under Illinois law, the plaintiff must allege facts that establish (1) the existence of an attorney-client relationship; (2) a duty on the part of the attorney arising out of that relationship; (3) a negligent act or omission that breached that duty; (4) proximate cause that shows that but for the attorney's negligence, the plaintiff would not have suffered an injury; and (5) damages. *Metrick v. Chatz,* 266 Ill.App.3d 649, 652, 203 Ill.Dec. 159, 161, 639 N.E.2d 198, 200 (1st Dist.1994) (citing *Claire Associates v. Pontikes,* 151 Ill.App.3d 116, 104 Ill.Dec. 526, 502 N.E.2d 1186 (1st Dist. 1986)); *Sheppard v. Krol,* 218 Ill.App.3d 254, 256–57, 161 Ill.Dec. 85, 87, 578 N.E.2d 212, 214 (1st Dist.1991) (citing *Pelham v. Griesheimer,* 92 Ill.2d 13, 64 Ill.Dec. 544, 440 N.E.2d 96 (1982)).

In any legal malpractice action, the plaintiff must plead the existence of a valid underlying cause of action, since no malpractice exists if counsel's negligence caused no damage to the plaintiff. *Sheppard,* 218 Ill. App.3d at 256–57, 161 Ill.Dec. at 87, 578 N.E.2d at 214 (citing *Claire Associates,* 151 Ill.App.3d at 122, 104 Ill.Dec. at 530, 502 N.E.2d at 1190). That is, the plaintiff is required to prove a "case-within-a-case." *Sheppard,* 218 Ill.App.3d at 257, 161 Ill.Dec. at 87, 578 N.E.2d at 214 (citing *Claire Associates,* 151 Ill.App.3d at 122, 104 Ill.Dec. at 530, 502 N.E.2d at 1190).

Where the underlying lawsuit was a civil action, the plaintiff must prove that but for his attorney's negligence, the plaintiff would have prevailed in the underlying action. *Zych v. Jones,* 84 Ill.App.3d 647, 652, 40 Ill.Dec. 369, 374, 406 N.E.2d 70, 75 (1st Dist.1980). However, most courts have adopted a different—and more stringent— standard where the underlying action was a criminal one:

The courts that have directly addressed the issue have held that the proximate cause inquiry is not limited to whether or not an adequate defense would have altered the result. Rather, due to the constitutional protections and public policy concerns unique to the criminal context, *the plaintiff must also establish his factual*

*innocence of the charges made against him in the underlying prosecution.*

*Sullivan v. Wiener,* No. 88 C 6813, 1989 WL 65163, *1 (N.D.Ill. June 5, 1989) (emphasis added) (citing numerous cases in various jurisdictions so holding).

Illinois courts apparently have not yet addressed the issue. However, federal courts sitting in Illinois have predicted that Illinois courts would follow the prevailing view. In *Walker v. Kruse,* 484 F.2d 802 (7th Cir.1973), the Seventh Circuit affirmed the dismissal of plaintiff's malpractice action against his former defense counsel on the ground that the Illinois Supreme Court had rejected plaintiff's ineffective assistance claim on appeal in the underlying criminal case. *Id.* at 803. However, it also noted that an Illinois court "might well hold, as a matter of law, that a criminal defendant cannot support a malpractice claim unless the plaintiff is able to establish his actual innocence." *Id.*

The court in *Sullivan* held what the *Walker* court noted. The *Sullivan* court stated: "[W]e see no indication that Illinois would depart from what is clearly the prevailing rule in other jurisdictions. We therefore conclude that plaintiff's actual guilt or innocence of the murder charges is relevant to this action." *Id.*

Similarly, in *Kuffel v. Rowland,* No. 93 C 6648, 1995 WL 31556, *2 (N.D.Ill. Jan. 26, 1995), the court noted that under the law of most jurisdictions, in a malpractice action arising from a criminal case, the plaintiff must prove his innocence in order to prove causation. The *Kuffel* court noted that Illinois courts had not yet decided this issue, but that it believed that "Illinois would follow what is clearly the prevailing rule in other jurisdictions." *Id.* at *3 (citing *Sullivan,* 1989 WL 65163; *Walker,* 484 F.2d at 804; *Olson v. North,* 276 Ill.App. 457 (1934)).

The *Kuffel* court set forth the rationale for this rule. It stated that, first, a criminal defendant who is guilty of the underlying offense should not be able to benefit indirectly from his crime by recovering damages in a malpractice action. *Kuffel,* 1995 WL 31556, *3 (citations omitted). Second, because criminal prosecutions already involve constitution-

al and procedural safeguards designed to maintain the integrity of the judicial system and protect defendants from overreaching governmental actions, criminal malpractice cases are unique. *Id.* (citations omitted). Third, a strong public interest exists in encouraging representation of criminal defendants, and this rule encourages such representation by reducing the risk that defense counsel, especially appointed ones, will be sued successfully for malpractice. *Id.* (citation omitted).

Thus, while Illinois courts may be silent on the issue of whether a former criminal defendant must prove his innocence to maintain a malpractice claim based on the criminal case, courts within this court's jurisdiction are not. The prevailing rule, and one that Illinois likely would adopt, is that a malpractice plaintiff who was convicted in the underlying criminal case must establish his actual innocence of the crimes of which he was convicted; otherwise, his counsel's purported negligence has caused him no damage.

In the present case, then, Levine first must allege and establish that his appeal would have been successful but for Kling's negligence. Moreover, though, he then must allege and establish that he is innocent of the crimes of which he was convicted. Otherwise, Kling's allegedly negligent handling of Levine's appeal caused no damage to Levine.

Levine has alleged no facts whatsoever establishing that he did not commit the crime of murder for hire or conspiracy of murder for hire. Furthermore, the court finds, as a matter of law, that Levine cannot establish his innocence. While the issue of proximate cause typically is one of fact, where reasonable persons cannot disagree, it is one of law. *Gelsomino v. Gorov,* 149 Ill. App.3d 809, 815, 104 Ill.Dec. 1, 5, 502 N.E.2d 264, 268 (1st Dist.1986). The court finds the evidence against Levine so overwhelming that reasonable persons cannot disagree about his guilt or innocence.

The Seventh Circuit, in its decision affirming Levine's conviction and sentence, set forth in substantial detail the evidence that was presented at trial against Levine. *See Levine,* 5 F.3d at 1102–1106. It would take far too much space to set forth that evidence here. In short, though, Bruce McKinney, the person hired by Levine to kill Donald Levine and his family, cooperated with the FBI and testified at length against Levine. Other evidence corroborated McKinney's testimony. In addition, Levine confided to his cellmate about the murders for hire while awaiting trial, and his cellmate testified against Levine at trial. Numerous other witnesses testified about Levine's motive for killing his brother and his brother's family.

A jury found Levine guilty beyond a reasonable doubt of using interstate commerce to effect murder for hire and conspiring to use interstate commerce to effect murder for hire. Levine has submitted nothing to this court to indicate that the jury was wrong. Even if Levine's trial was not perfect, and even if Kling's representation on appeal was flawed, the court finds that the evidence at trial, as described by the court of appeals, demonstrating Levine's guilt was so considerable that reasonable minds could not differ as to Levine's guilt or innocence.

The court finds that Levine has not alleged and cannot allege facts showing his actual innocence of the crimes of which he was convicted, and therefore has not alleged and cannot establish that Kling's allegedly negligent representation of him resulted in the damages that Levine now seeks. Accordingly, the court finds that Levine has not stated, and cannot state, a claim for legal malpractice against Kling.

### III.  *CONCLUSION*

For the foregoing reasons, the court grants defendant Richard Kling's motion to dismiss plaintiff Robert M. Levine's complaint, and dismisses plaintiff's complaint with prejudice.